# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

FLOR M. ALVAREZ,            )
                                   )
                 **Plaintiff,**      )
                                   )    **CIVIL ACTION**
v.                                      )
                                   )    **No. 11-2512-JWL**
MICHAEL J. ASTRUE,         )
**Commissioner of Social Security,**    )
                                   )
                 **Defendant.**     )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability (SSD) benefits and Supplemental Security income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error as alleged by Plaintiff, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.  Background

Plaintiff applied for both SSD and SSI benefits on November 10, 2008, alleging disability beginning July 13, 2007. (R. 15, 127-63). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an

Administrative Law Judge (ALJ).  (R. 15, 64-67, 94-95).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ George M. Bock on July 6, 2010.  (R. 15, 45, 103-18).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 15, 45-63).  On September 2, 2010, ALJ Bock issued a lengthy, thorough, and unusually detailed decision.  (R. 15-39).  In his decision, the ALJ found that the work Plaintiff began in late June 2007 consisted of substantial gainful activity precluding a finding of disability in that year but not thereafter, and that he would consider "the entirety of the relevant period at issue from and after July 13, 2007,[1] at all remaining relevant steps of the sequential evaluation process."  (R. 18).  He found that Plaintiff has a severe combination of impairments including fibromyalgia, degenerative disc disease, headaches, an episodic history of seizure-like activity, affective disorder, and possible somatoform disorder, but that those impairments do not meet or equal the severity of any impairment listed in the Listing of Impairments.  (R. 18-19).

The ALJ's residual functional capacity (RFC) discussion and analysis constitutes the bulk of the decision at issue and consists of eighteen pages wherein the ALJ summarized the evidence, including Plaintiff's allegations of symptoms and limitations, the medical records, and the medical opinions.  (R. 19-36).  Throughout his discussion the ALJ pointed to record evidence and medical opinion evidence both consistent with and

---

[1]The ALJ noted that Plaintiff alleged differing onset dates, but he recognized the earliest date, July 13, 2007, as Plaintiff's alleged onset date because it was the earliest date and because it was the date provided in Plaintiff's disability questionnaire.  (R. 15) (citing Exs. 4D/1, 6D/3, 5D/1, and 6E/2 (R. 150, 155, 160, 229)).

inconsistent with Plaintiff's allegations of symptoms and limitations, and concluded that Plaintiff's "allegations regarding the intensity persistence, and overall limiting effects of these symptoms are not credible as they are inconsistent with objective and clinical findings reflected in medical record [sic] and inconsistent with other substantial evidence of record."  (R. 35).

Intertwined within this discussion and analysis, the ALJ considered and assigned weight to the medical opinions of eight medical sources:  Dr. Huet-Vaughn, a treating[2] physician; Dr. Duncan, a nontreating physician who examined Plaintiff at the request of the Social Security Administration (SSA, or agency); Dr. Stern, a nontreating psychologist who examined Plaintiff for the SSA; Dr. Jessop, a nonexamining psychologist who reviewed the record for the agency at the initial determination; Dr. Mongeau, a nontreating physician who examined Plaintiff for the agency; Dr. Schlosberg, a nontreating psychologist who examined Plaintiff for the agency; Dr. Bullock, a nonexamining physician who reviewed the record for the agency at the reconsideration determination; and Dr. Schulman, a nonexamining psychologist who also reviewed the record for the agency at the reconsideration determination.  (R. 21-33).  The ALJ

---

[2]The regulations define three types of "acceptable medical sources:"

"Treating source:"  an "acceptable medical source" who has provided the claimant with medical treatment or evaluation in an ongoing treatment relationship.  20 C.F.R. §§ 404.1502, 416.902.

"Nontreating source:"  an "acceptable medical source" who has examined the claimant, but never had a treatment relationship.  Id.

"Nonexamining source:"  an "acceptable medical source" who has not examined the claimant, but provides a medical opinion.  Id.

determined he could not accord controlling weight to Dr. Huet-Vaughn's opinion, but he accorded "significant weight" to her opinion that Plaintiff was restricted to lifting twenty pounds, and he determined that Dr. Huet-Vaughn's records "are indicative of her medical opinion that claimant's fibromyalgia and overall medical condition was [sic] not of disabling severity." (R. 22-23). He noted that during the initial determination Dr. Jessop opined that the record evidence at that time was insufficient to establish a disabling impairment, and he accorded "significant weight" to that opinion. (R. 29). He also accorded "significant weight" to the opinions of Dr. Duncan, Dr. Stern, Dr. Mongeau, Dr. Bullock, and Dr. Schulman. (R. 25, 26, 29, 30, 32, 33). The ALJ accorded "little weight" to Dr. Schlosberg's opinion that Plaintiff was limited in the abilities to persist with simple tasks, work with others without distraction, or maintain a regular work schedule, but he accorded "significant weight" to Dr. Schlosberg's opinion that Plaintiff's judgment and reasoning was not impaired, that she retains adequate judgment, and that she retains the capacity to make appropriate social interactions in a work setting. (R. 32).

The ALJ assessed Plaintiff with the RFC for a range of light work with certain additional limitations:

> She is precluded from any jobs that require crawling or climbing upon ladders, ropes, or scaffolding, and she is restricted to jobs requiring no more than occasional performance of other basic postural work-related activities. She is precluded from any job requiring above-shoulder work, but is capable of performing other basic manipulative work-related activities within the above-cited limitations. She is precluded from any jobs that require exposure to unprotected heights or work around hazards. She retains limited ability to speak English and requires job instructions by demonstration only. She is limited to 1-step to 2-step, repetitive, unskilled

4

> work.  She otherwise retains the capacity to understand, remember, and carry out simple instructions or tasks; use simple judgement; respond appropriately to supervisors, coworkers, and usual work situations; and deal with changes in a typical work setting.

(R. 19) (finding no. 5).

The ALJ determined that Plaintiff is unable to perform any of her past relevant work, is a "younger individual age 18-49" within the meaning of the regulations, is literate with at least a limited, 11th-grade education, can effectively communicate in English, and has acquired no skills which are transferable to work within her RFC.  (R. 36-38).  Based upon Plaintiff's age, education, past work experience, and RFC, the ALJ determined that jobs exist in significant numbers in the economy that Plaintiff is able to perform, represented by such jobs as a deli cutter/slicer, a marker, or a photocopy machine operator.  (R. 38-39).  Therefore, he determined that Plaintiff is not disabled within the meaning of the Act, and denied her applications for benefits.  (R. 39).

Plaintiff sought review by the Appeals Council, and submitted a brief noting her allegations of error in the decision.  (R. 8-11, 279-81).  The Appeals Council made the brief a part of the administrative record in this case, and considered the arguments in that brief, but found no reason under SSA rules to review the ALJ's decision, and denied Plaintiff's request for review.  (R. 1-5).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1);  Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has a physical or mental impairment which prevents her from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that she is not only unable to perform her past relevant work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2010); Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show there are jobs in the economy within Plaintiff's RFC.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff makes three allegations of error.  She claims that the ALJ applied the incorrect legal standard to his credibility determination and that substantial evidence does not support the finding that Plaintiff's allegations are not credible.  She claims the ALJ failed to accord sufficient weight to Dr. Schlosberg's nontreating source opinion.  And, she claims the ALJ did not meet his step-five burden because he did not specify Plaintiff's mathematical computation abilities nor specific limitations with regard to maintaining concentration, persistence, or pace.  The Commissioner argues that the ALJ applied the correct credibility standard and that substantial record evidence supports the credibility determination.  He argues that the ALJ properly evaluated Dr. Schlosberg's opinion, appropriately according greater weight to those portions of the opinion which

8

were consistent with and supported by the record evidence and lesser weight to those

portions which were not supported by record evidence.  He argues that despite the general

rule that nontreating source opinions are worthy of greater weight than the opinions of

nonexamining sources, the ALJ stated his reasons for according greater weight to certain

nonexamining source opinions, and that the nonexamining source opinions objected to by

Plaintiff were not merely check box forms unaccompanied by thorough written reports,

but each of those sources provided a narrative summary explaining his findings.  And, the

Commissioner argues that substantial evidence supports the ALJ's findings regarding Dr.

Schlosberg's opinion.  Finally, the Commissioner argues that substantial evidence

supports the ALJ's step five determination that there are a significant number of jobs in

the economy which are within Plaintiff's capabilities.  The court addresses Plaintiff's

claims in the order presented in Plaintiff's brief, and finds no error in the ALJ's decision.

## III.    Credibility Determination

Plaintiff dedicated ten pages of her brief to her claim of error in the ALJ's

credibility determination.  She argues variously that Dr. Huet-Vaughn's restriction to

work which required lifting no more than twenty pounds pre-dated the alleged onset date;

that Plaintiff's periods of work after the alleged onset date do not disprove disability; that

the ALJ's decision in several aspects reflects a misunderstanding of fibromyalgia; that the

ALJ mischaracterized Dr. Huet-Vaughn's treatment notes in finding that Dr. Huet-

Vaughn did not agree that Plaintiff was disabled; that the ALJ misinterpreted the medical

records to find Plaintiff incredible; that the ALJ abstracted portions of the medical record

supportive of his decision, while ignoring the evidence as a whole--specifically the evidence supportive of Plaintiff; that the ALJ ignored Plaintiff's testimony at the hearing, Plaintiff's allegations in her disability questionnaires and reports, and Plaintiff's reports to her physicians; that the ALJ's consideration of daily activities was an improper reliance on Plaintiff's sporadic performance of tasks which do not prove the ability to work; and that the ALJ substitutes his judgment for that of medical professionals.  The Commissioner argues that the ALJ applied the correct legal standard to his credibility determination, and that while a formal factor-by-factor evaluation is not required, the ALJ properly noted several factors from Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987) in his credibility analysis.

### A.      Standard for Evaluating Credibility

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488 (citations and quotation omitted).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489.  The regulations also suggest relevant factors to be considered in evaluating credibility, which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the

ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994); but see Thompson, 987 F.2d at 1490 ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988); Hackett, 395 F.3d at 1173 (same).

Moreover, Plaintiff must demonstrate an error in the ALJ's rationale or findings, the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966) (same) (citing NLRB v. Nev. Consol. Copper Corp., 316 U.S. 105, 106 (1942)).  Where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

**B.**      **Analysis**

Plaintiff's argument primarily asks the court to reweigh the ALJ's credibility analysis. She explains how, in her view, the evidence supports a finding that her allegations are credible and argues that, therefore, the ALJ's credibility finding is not supported by substantial evidence. However, the court's review of credibility findings in general is deferential, and its review of the credibility finding in this case reveals that it is supported by substantial evidence in the record. Plaintiff does not point to record evidence which establishes that the ALJ's finding cannot be accepted. The court may not reweigh the evidence, or substitute its judgment for that of the Commissioner. Bowman, 511 F.3d at, 1272; accord, Hackett, 395 F.3d at 1172.

The court will nevertheless specifically address several of Plaintiff's credibility arguments. Plaintiff alleges error in the ALJ's finding that Dr. Huet-Vaughn's restriction to lifting 20 pounds is inconsistent with Plaintiff's allegation that she is limited to lifting 10 pounds. This is error, she argues, because Dr. Huet-Vaughn's limitation predates the alleged onset date, and was erroneously characterized by the ALJ as formulated "shortly prior to the commencement of the relevant period at issue." (Pl. Br. 16) . First, Plaintiff ignores the relevant period for considering medical evidence relating to an alleged period of disability. The regulations require that the Commissioner will develop a "complete medical history for at least the 12 months preceding the month in which you file your application." 20 C.F.R. §§ 404.1512(d), 416.912(d). Here the record reveals that Plaintiff filed her first applications on January 28, 2008. (R. 127-135). Thus, the relevant period at issue began January 28, 2007, and Dr. Huet-Vaughn's opinion, dated September

13

1, 2006 was properly characterized by the ALJ as "provided by Dr. Huet-Vaughn shortly

prior to the commencement of the relevant period at issue."  (R. 21).

Moreover, Plaintiff's argument ignores the analysis of the ALJ.  With regard to his

credibility finding, the ALJ explained the relevance of Dr. Huet-Vaughn's lifting

restriction:

> although <u>claimant testified</u> that Dr. Huet-Vaughn restricted her to lifting no
> more than 10 pounds, the <u>medical records directly refute that allegation</u> and
> establish that physician actually provided a lifting restriction of 20 pounds
> in September 2006.  Claimant's testimony in this regard is refuted by
> substantial evidence, <u>which detracts from her general credibility</u> in this
> appeal.  Further, subsequent medical records from Dr. Huet-Vaughn cited
> below do not reflect that she provided any change in the lifting restriction,
> but rather clearly specified her opinion that claimant's fibromyalgia was not
> disabling to her.

(R. 22) (emphases added).  The point of the ALJ's analysis is that Plaintiff's allegation

that Dr. Huet-Vaughn limited her to lifting 10 pounds is contradicted by Dr. Huet-

Vaughn's actual restriction to lifting 20 pounds, and that there is no indication Dr. Huet-

Vaughn changed the restriction.  Although Plaintiff argues (correctly) that the restriction

occurred before her onset date, she points to no evidence that Dr. Huet-Vaughn (or any

other physician) placed greater lifting restrictions on her after the alleged onset date.  The

ALJ did not err in relying upon this factor in discounting Plaintiff's credibility.

Plaintiff argues that the ALJ erred in using Dr. Huet-Vaughn's October 2007

treatment note regarding disability due to fibromyalgia.  As suggested by Plaintiff's

argument, Dr. Huet-Vaughn's treatment note contains the following notation:

> Friend told her Fibromyalgia would qualify her for disability.  I advised her
> it would be difficult to get disability for her fibromyalgia - informed her
> that many fibromyalgia patients work full time and that disability would be
> difficult to prove.  Suggested we work with her to make her fibromyalgia
> manageable.

(R. 355).

As quoted above, the ALJ noted that he understood this notation to indicate Dr.

Huet-Vaughn's "opinion that claimant's fibromyalgia was not disabling to her."  (R. 22).

Later, when specifically discussing this portion of Dr. Huet-Vaughn's opinion, the ALJ

stated, "Dr. Huet-Vaughn's specific indications to claimant in these regards are indicative

of her medical opinion that claimant's fibromyalgia and overall medical condition was

[sic] not of disabling severity and did not preclude her from engaging in full-time

competitive employment within the 20-pound lifting restriction previously provided."  (R.

23).  In light of Dr. Huet-Vaughn's 20 pound lifting restriction and her notation as quoted

above, that ALJ's view of that note is reasonable in the circumstances, and is supported

by substantial record evidence.  While that is not the only conclusion one must reach from

the record evidence, it is the conclusion reached by the ALJ and it is supported by the

evidence.  The court may not substitute its judgment for that of the ALJ even though it

might "justifiably have made a different choice had the matter been before it de novo."

Lax, 489 F.3d at 1084.  The ALJ's finding is not error.

Plaintiff argues that fibromyalgia symptoms are entirely subjective, that there are

no clinical tests to identify it, and that courts have nonetheless recognized that it can be

disabling.  While this is no doubt true, it is beside the point here.  An ALJ is not required

to credit every allegation a claimant makes merely because she has fibromyalgia.  Here the ALJ recognized that fibromyalgia can be a disabling impairment, but he found that based upon the record evidence in this case, Plaintiff's allegations of symptoms are not credible.  Plaintiff has not shown error in that finding.

Plaintiff argues that the ALJ "repeatedly substitutes his own judgment for that of the medical professionals," and thereby discounts the diagnoses of fibromyalgia by nontreating and treating professionals.  (Pl. Br. 24).  She argues that the ALJ erroneously relied upon a 1990 medical article to dispute both the nontreating and treating physicians' findings that Plaintiff has fibromyalgia.  The court cannot agree.

In his step-two finding that Plaintiff has a severe combination of impairments, the ALJ began by stating, "The medical evidence establishes claimant has fibromyalgia."  (R. 18) (finding no. 3).  There is no room for suggestion that the ALJ did not accept the diagnosis of fibromyalgia.  However, as Plaintiff suggests, the ALJ cited a 1990 medical article for the proposition that a diagnosis of fibromyalgia requires two clinical criteria, (1) a history of widespread pain present for at least three months, and (2) pain on digital palpation in at least 11 of 18 trigger point sites.  (R. 26-27) (citing Frederick Wolfe, et al, "The Am. Coll. of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Comm.," Arthritis and Rheumatism, Vol. 33, No. 2, 171 (February 1990)).  The ALJ noted that many of the physicians here indicated in their treatment notes only that Plaintiff had "tenderness" to palpation and did not indicate 11 of

16

18 positive trigger points.  But, the ALJ did not find that fibromyalgia was not a proper

diagnosis.  Rather, he explained:

> Even so, inasmuch as primary treating physicians, as well as Dr.
> Appelbaum, a primary consulting neurological specialist, have accorded
> diagnoses of fibromyalgia, claimant is accorded a finding of such as a
> medically determinable impairment as the above-cited finding attests.
> However, a disability determination under the Social Security Act is not
> dependent primarily upon any specific diagnosis, but rather primarily the
> severity of symptoms and work-related limitations resultant from a
> medically determinable impairment(s), and the medical evidence dated
> during the relevant timeframe cited above, as well as the subsequent
> timeframe cited below, recurrently does not reflect findings indicative of
> the full diagnostic criteria for fibromyalgia or the degrees of pain and other
> physical and mental symptoms and limitations <u>claimant alleges</u> in this
> appeal.

(R. 27) (emphasis added).  The ALJ did not substitute his medical judgment for that of the

medical professionals, in fact, he credited the diagnoses of fibromyalgia made by the

"primary treating physicians" and the "primary consulting neurological specialist."  He

was not suggesting that fibromyalgia should not have been diagnosed, he was suggesting

that in considering the credibility of Plaintiff's allegations of symptoms, beyond the mere

diagnoses, the <u>clinical findings</u> contained in the medical records and discussed elsewhere

in his decision were so weak and so indefinite as to confirm that Plaintiff's symptoms

were not as severe as alleged by Plaintiff.  Plaintiff has not shown that this finding is

either erroneous or irrelevant to the issue of credibility.

    As Plaintiff argues, her reported symptoms are consistent with fibromyalgia.  (Pl.

Br. 24).  And, as the ALJ specifically found "claimant's combined medically

determinable impairments [(which include fibromyalgia)] could reasonably be expected

17

to cause the alleged symptoms." (R. 35). However, the ALJ found, based upon his review of all of the evidence in accordance with <u>Luna</u> that Plaintiff's "allegations regarding the intensity, persistence, and overall limiting effects of these symptoms are not credible." <u>Id.</u> His finding was made, in part, because the clinical examinations revealed that her pain was not as widespread, and did not reflect as many positive "trigger points" as required by the American College of Rheumatology 1990 criteria for the classification of fibromyalgia. To the extent Plaintiff suggests it was error for the ALJ even to consider the 1990 article, the court notes that many courts, including in this district, have relied upon that article in considering fibromyalgia in disability cases. <u>See</u> <u>Denton v. Astrue</u>, 596 F.3d 419, 421 n.1 (7th Cir. 2010); <u>Benecke v. Barnhart</u>, 379 F.3d 587, 590 (9th Cir. 2004); <u>Galligan v. Astrue</u>, 656 F. Supp. 2d 1067, 1096 (D. Ariz. 2009); <u>Curtis v. Astrue</u>, 623 F. Supp. 2d 957, 966 (S.D. Ind. 2009); <u>Malloy v. Astrue</u>, 604 F. Supp. 2d 1247, 1250 (S.D. Iowa 2009); <u>Kurth v. Astrue</u>, 568 F. Supp. 2d 1020, 1029 (W.D. Wis. 2008); <u>Reliford v. Barnhart</u>, 444 F. Supp. 2d 1182, 1186-87 (N.D. Ala. 2006); <u>Boineau v. Barnhart</u>, 378 F. Supp. 2d 690, 694 (D.S.C. 2005); <u>Criner v. Barnhart</u>, 208 F. Supp. 2d 937, 951 (N.D. Ill. 2002); <u>Anderson v. Apfel</u>, 100 F. Supp. 2d 1278, 1283 (D. Kan. 2000).

Finally, the court feels compelled to address a very vague and broad argument included in the credibility section of Plaintiff's brief, and for which the court sees only the most tenuous connection to the ALJ's credibility finding. Plaintiff argues:

> The ALJ appears to have ignored the evidence as a whole, choosing instead to abstract selective pieces of evidence favorable to Defendant's position. <u>See</u> <u>O'Connor v. Shalala</u>, 873 F. Supp. 1482, 1491 (D. Kan. 1995); <u>Jones v.</u>

> Sullivan, 804 F. Supp. 1398, 1406 (D. Kan. 1992); Claassen v. Heckler, 600
> F. Supp. 1507, 1511 (D. Kan. 1985).  Findings as to credibility, however,
> should be closely and affirmatively linked to the substantial evidence.
> Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  Furthermore, the ALJ
> cannot ignore evidence favorable to the Plaintiff.  Owen v. Chater, 913 F.
> Supp. 1413, 1420 (D. Kan. 1995).  Here, in evaluating credibility, the ALJ
> did ignore the evidence favorable to the Plaintiff including, but not limited
> to, the repeated positive findings on examination of her neck, positive
> Spurling's maneuver (Tr. 447), nystagmus (Tr. 458, 460), abnormal Cranial
> II, III and VI findings (Tr. 458, 460), positive Rhomberg's test (Tr. 454),
> confirmations of body jerking (Tr. 460), observations of fatigue, etc., all as
> outlined in the Evidence section above.  The ALJ is required to "discuss the
> uncontroverted evidence he chooses not to rely upon, as well as
> significantly probative evidence he rejects."  Clifton v. Chater, 79 F.3d
> 1007, 1009-1010 (10th Cir. 1996).  The findings of the medical
> professionals which were positive were improperly ignored by the ALJ.

(Pl. Br. 25).

To be sure, courts in this district have long held that an ALJ may not ignore the

evidence as a whole while abstracting selective pieces of evidence favorable to the

decision, and he may not ignore evidence favorable to plaintiff.  E.g., O'Connor, 873 F.

Supp. at 1491; Owen, 913 F. Supp. at 1420; see also Hamlin v. Barnhart, 365 F.3d 1208,

1219 (10th Cir. 2004) ("ALJ may not pick and choose which aspects of an uncontroverted

medical opinion to believe, relying on only those parts favorable to a finding of

nondisability."); Frantz v. Astrue, 509 F.3d 1299, 1302 (10th Cir. 2007) (finding error

where the ALJ ignored evidence supporting disability while highlighting evidence

favorable to a finding of nondisability).  "[I]n addition to discussing the evidence

supporting his decision, the ALJ also must discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects." <u>Clifton</u> <u>v. Chater</u>, 79 F.3d 1007, 1010 (10th Cir. 1996).

Plaintiff has not shown how any of the findings allegedly ignored by the ALJ support a finding of disability in general.  Much less, she has not made the least assertion that any of those findings support the credibility of her allegations of disabling symptoms. While the positive findings alleged by Plaintiff may be present in the record, she has not related them in any way to a showing of disability.  Medically determinable impairments "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1508, 416.908.  They "must be established by medical evidence consisting of signs, symptoms, and laboratory findings."  <u>Id.</u>  The findings to which Plaintiff appeals may be sufficient "signs, symptoms, and laboratory findings" to establish the presence of an impairment.  However, the mere presence of an impairment is insufficient to establish that the impairment is severe at step two of the evaluation process.  <u>Hinkle v. Apfel</u>, 132 F.3d 1349, 1352 (10th Cir. 1997).  The <u>de minimis</u> step two finding is much less than is needed to show that an impairment is <u>disabling</u>.  Plaintiff has made no attempt to show that the findings allegedly ignored by the ALJ establish limitations which preclude work of any kind, and such limitations are what is required to establish disability.  The only findings discussed by Plaintiff which might be related to limitations are those regarding "body jerking," and "fatigue," and Plaintiff points to no evidence and provides no

rationale that these findings are so severe as to preclude work in any form, much less to preclude light work and the limitations assessed by the ALJ.

Moreover, the court fails to see, and Plaintiff does not explain, how the findings allegedly ignored by the ALJ relate to the ALJ's discussion or analysis regarding the credibility of Plaintiff's allegations of symptoms.  In the terms used by the Tenth Circuit in Clifton, Plaintiff has not shown that the findings allegedly ignored by the ALJ either support his decision, are uncontroverted, were not relied upon, were rejected, or are significantly probative.  She has simply not established the relevance of those findings to the decision at issue.  As the Clifton decision recognized, an ALJ cannot, and need not, discuss every piece of factual evidence available in the administrative record.  Such exhaustive discussion would be prohibitively lengthy, costly, and inefficient to decide the multitude of cases the Commissioner must consider each year.  The court has reviewed the Commissioner's decision and the administrative record in this case, and finds that the ALJ's summary of the evidence in the decision is a fair summary and does not appear to deliberately slant, ignore, or conceal the relevant facts.  In fact, the court has already noted that the decision at issue, with a length of twenty-five pages, is lengthy, thorough, and unusually detailed compared with the mine run of Social Security decisions in this court's experience.  Plaintiff has shown no error in the ALJ's credibility determination.

## IV.     Weight Accorded to the Nontreating Source Opinion of Dr. Schlosberg

Plaintiff claims the ALJ erred as a matter of law by failing to accord appropriate weight to Dr. Schlosberg's opinion.  She argues that the ALJ's basis for discounting Dr.

Schlosberg's opinion was his credibility finding, and that it was error for the ALJ to accord greater weight to the nonexamining source opinions of Dr. Schulman and Dr. Jessop than to the nontreating source opinion of Dr. Schlosberg. (Pl. Br. 26-27). This is so, in Plaintiff's view because Dr. Schlosberg actually examined Plaintiff, because nonexamining source opinions are entitled to the least weight of all, and because the opinions of Dr. Schulman and Dr. Jessop were provided on "check-box" forms which do not constitute substantial evidence. Id. She argues that Dr. Schlosberg's opinion should have been accorded "significant weight," and points to record evidence which, in her view, supports that weight. Id. at 27. The Commissioner argues that the ALJ weighed the medical opinions in accordance with the regulations, and that the record evidence supports the ALJ's evaluation of Dr. Schlosberg's opinion. (Comm'r Br. 8-12). He argues that although the opinions of Dr. Schulman and Dr. Jessop were contained in "check-box" forms, the doctors are psychological experts, the regulations require the ALJ to consider their opinions as expert opinions, and both Dr. Schulman and Dr. Jessop provided a narrative summary on the forms, explaining their findings. Id. at 12.

### A.      The ALJ's Findings Regarding Dr. Schlosberg's Opinions

The ALJ's evaluation of Dr. Schlosberg's opinions appears on pages seventeen and eighteen of his decision. (R. 31-32). He noted that Plaintiff reported to Dr. Schlosberg that she was depressed because she had no income and that she was seeking disability benefits because she cannot work. He noted that Plaintiff told Dr. Schlosberg that a treating physician recently told her she is unable to work, that she has seizures, and

that a vertebral disc "is out."  (R. 31).  The ALJ noted that there is no evidence any

treating physician told Plaintiff she was currently unable to work, but that Dr. Huet-

Vaughn opined that her fibromyalgia was not disabling and restricted her only to lifting

20 pounds.  He noted that Plaintiff's current physicians at that time, did not opine that she

was disabled, but repeatedly instructed her to regularly exercise and increase her physical

activity.  He noted the medical evidence revealed only mild disc bulges and minimal to

mild degenerative pathology, and that although Plaintiff had been hospitalized for

seizure-like symptoms, the medical findings do not support a seizure disorder and

provided no evidence of any epileptiform activity.  Id.  He provided the following

analysis regarding the weight assigned to Dr. Schlosberg's opinions:

> Upon direct examination, Dr. Schlosberg reported claimant demonstrated
> normal motor functioning, ability to walk without assistance, low average to
> average (overall adequate) recent and remote memory, good grooming and
> hygiene, logical and goal-directed speech (in English), a cooperative
> demeanor, no evidence of psychosis, a broad range of mood with an
> appropriate affect, some difficulties with attention partly related to language
> difficulties, and limited insight but fair judgement.  The examiner specified
> claimant appeared to be "very focused on somatic symptoms" with regard
> to physical problems and that her current emotional symptoms are of
> moderate intensity that could cause some interference with her ability to
> cope with everyday stresses, persist with simple tasks, or work with others
> without distractions, due largely to preoccupation with physical symptoms,
> and that her mood related symptoms could prevent her ability to maintain a
> regular work schedule.  Controlling weight may not be accorded to these
> assessments, as the examiner is not a treating physician.  Little weight is
> accorded to the assessments regarding ability to persist in simple tasks,
> work with others without distraction, or maintain a regular work schedule as
> [(1)] claimant substantially exaggerated her physical impairments at
> presentation and [(2)] Dr. Schlosberg admitted his assessments in these
> regards are heavily influenced by her preoccupation with alleged physical
> problems. [(3)] The above-cited medical treatment notes and consultative

examination reports repeatedly indicate claimant retains substantially less severe physical pathology and far greater overall physical functioning than she indicated to Dr. Schlosberg and despite her subjective complaints of physical symptoms.  Moreover, Dr. Schlosberg further opined claimant's practical judgement and reasoning was not significantly impaired and was adequate to make simple work-related decisions, that she retains adequate judgement, and that she retains the capacity to maintain appropriate social interactions in a work setting, all of which are accorded <u>significant weight</u> as it is far more consistent with [(1)] actual mental status findings of record and [(2)] the evidence as a whole.  Further, [(3)] Dr. Schlosberg assigned a Global Assessment of Functioning score of 55-60, not indicative of disabling mental functioning, but rather no more than "moderate" symptoms or limitation of functioning, up to the borderline range of only "mild" symptoms or limitations (Diagnostic and Statistical Manual of Mental Disorders, 4th Edition, 1994, American Psychiatric Association), not indicative in [sic] inability to persist with simple tasks, work with others without distraction, or maintain a regular work schedule, particularly when considered in conjunction with the evidence of record as a whole. (Exhibit 9F [(R. 517-20)]).

(R. 31-31) (underlining and numbering added by the court).

## B.     **Analysis**

As a preliminary matter, it must be noted that the ALJ did not accord only "little weight" to Dr. Schlosberg's opinion, as Plaintiff alleges.  Rather, as quoted and emphasized by underlining above, the ALJ accorded "little weight" to Dr. Schlosberg's opinions that Plaintiff's symptoms could cause some interference with her ability to cope with everyday stresses, persist with simple tasks, work with others without distractions, and could prevent her ability to maintain a regular work schedule; <u>and</u> he accorded "significant weight" to Dr. Schlosberg's opinions that Plaintiff's practical judgement and reasoning was adequate to make simple work-related decisions, and that she retains the capacity to maintain appropriate social interactions in a work setting.  Moreover, when

24

the Commissioner pointed out that the ALJ "accorded differing weight to different elements of Dr. Schlosberg's opinion" (Comm'r Br. 11), Plaintiff argued that, "[n]otably absent from Defendant's statement is any recitation to any portion of the ALJ's decision wherein he granted Dr. Schlosberg's opinion any more than 'little' weight." (Reply 3). Contrary to Plaintiff's argument, and apparently unnoticed by Plaintiff or her counsel, the ALJ accorded "significant weight" to portions of Dr. Schlosberg's opinions.

As Plaintiff's argument implies, the ALJ's decision to discount portions of Dr. Schlosberg's opinion was based on his credibility finding, at least to the extent that the first reason given to discount the opinion was that "claimant substantially exaggerated her physical impairments at presentation." As discussed above, the ALJ did not err in finding that Plaintiff's allegations are not credible. Significantly, however, that was not the only reason for discounting portions of the opinion. He also explained that Dr. Schlosberg admitted his opinion was "heavily influenced by [Plaintiff's] preoccupation with alleged physical problems," and that the "medical treatment notes and consultative examination reports repeatedly indicate claimant retains substantially less severe physical pathology and far greater overall physical functioning than she indicated to Dr. Schlosberg." (R. 32). Moreover, the ALJ also accorded "significant weight" to portions of Dr. Schlosberg's opinions because those portions were "far more consistent" with the mental status findings of record and the evidence as a whole, and because Dr. Schlosberg's GAF[3]

_____

[3]A Global Assessment of Functioning, or GAF, score is a subjective determination which represents "the clinician's judgment of the individual's overall level of

score of 55-60[4] was at the top end of the "moderate" range of limitations and approaching the "mild" range of limitations.

Plaintiff also argues that it was error for the ALJ to accord greater weight to the opinions of Dr. Schulman and Dr. Jessop than to the opinion of Dr. Schlosberg because Dr. Schlosberg actually examined Plaintiff, because nonexamining source opinions are entitled to the least weight of all, and because the opinions of Dr. Schulman and Dr. Jessop were given on "check-box" forms which do not constitute substantial evidence. Plaintiff is correct that the opinions of a nontreating psychologist, such as Dr. Schlosberg, who has examined the claimant, are generally worthy of greater weight than the opinions of nonexamining psychologists, such as Dr. Schulman and Dr. Jessop, who have merely reviewed the record. Robinson v. Barnhart, 366 F.3d 1078, 1084 (10th Cir. 2004); Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983), Whitney v. Schweiker, 695 F.2d 784, 789 (7th Cir. 1982), and

---

functioning."  Am. Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32 (4th ed. text revision 2000).  The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death).  Id. at 34.  GAF is a classification system providing objective evidence of a degree of mental impairment.  Birnell v. Apfel, 45 F. Supp. 2d 826, 835-36 (D. Kan. 1999) (citing Schmidt v. Callahan, 995 F. Supp. 869, 886, n.13 (N.D. Ill. 1998)).

[4]GAF scores in the range of 51-60 indicate "**Moderate symptoms** . . . **OR moderate difficulty in social, occupational, or school functioning.**"  DSM-IV-TR, at 34 (emphasis in original).

GAF scores in the range of 61-70 indicates "**Some mild symptoms** . . . **OR some difficulty in social, occupational, or school functioning** . . . **but generally functioning pretty well.**"  DSM-IV-TR, 34 (emphasis in original).

Wier ex rel. Wier v. Heckler, 734 F.2d 955, 963 (3d Cir. 1984)).  However, Plaintiff ignores that the ALJ found certain portions of Dr. Schlosberg's opinion should be given "little weight" in part, because they were inconsistent with other medical treatment notes and consultative examination reports, whereas other portions of Dr. Schlosberg's opinion should be given "significant weight" in part, because those portions were "far more consistent" with mental status findings and the evidence as a whole.

Here, the ALJ found that he could not give controlling weight to the treating source opinion of Dr. Huet-Vaughn.  (R. 22).  Where no treating source opinion is worthy of controlling weight, all medical source opinions are required to be evaluated in accordance with factors enumerated in the regulations.  20 C.F.R. §§ 404.1527(d), 416.927(d); SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2012).  As the court noted previously, the ALJ did just that, and accorded "significant weight" to the opinions of seven other physicians and psychologists, and to a portion of the opinions of Dr. Schlosberg.  However, he found that portions of Dr. Schlosberg's opinions must be discounted because Plaintiff exaggerated her reports to Dr. Schlosberg, Dr. Schlosberg admitted his opinions were heavily influenced by Plaintiff's preoccupation with alleged physical problems, and those portions of Dr. Schlosberg's opinion were not consistent with or supported by the evidence as a whole.  In such circumstances, the weight of the evidence so overwhelmed the discounted portion of Dr. Schlosberg's opinions that the opinions of the nonexamining psychologists were properly given greater weight.

27

Plaintiff's argument that Dr. Schulman's and Dr. Jessop's opinions should be discounted must be similarly rejected.  To the extent that Dr. Jessop's opinion is even relevant to the issues presented here, the court finds that Dr. Jessop's opinion does not relate to the same issues as did Dr. Schlosberg's opinion and the ALJ did not accord Dr. Jessop's opinion greater weight than he did Dr. Schlosberg's opinion.  The ALJ noted that Dr. Jessop opined that the evidence present at the initial determination was insufficient to establish disability, and he accorded "significant weight" to that opinion.  (R. 29).  Plaintiff does not allege that Dr. Jessop's opinion in that regard was erroneous, and the ALJ did not accord that opinion weight at the expense of Dr. Schlosberg's opinion.  Dr. Jessop's opinion and Dr. Schlosberg's opinions relate to entirely different issues.  Plaintiff has shown no error in weighing Dr. Jessop's opinion.

With regard to Dr. Schulman's opinions, as the Commissioner notes, the opinions were not expressed merely in check-the-box forms, but Dr. Schulman provided a narrative explanation both for his Mental RFC Assessment (R. 545), and his Psychiatric Review Technique form analysis.  (R. 559).  In fact, in his Psychiatric Review Technique form, Dr. Schulman specifically referred to and summarized Dr. Schlosberg's "Independent mental status examination . . . completed 5/4/9."  (R. 559).  Dr. Schulman's opinion considered and accounted for Dr. Schlosberg's opinions.  Based upon the circumstances of this case, Plaintiff has shown no error in according "significant weight" to Dr. Schulman's opinions while at the same time according "significant weight" to portions of Dr. Schlosberg's opinion and "little weight" to other portions of that opinion.

28

The ALJ explained his rationale in doing so, and that rationale is supported by substantial record evidence.

In his reply brief, Plaintiff points out that an "ALJ is not entitled to 'pick and choose' through an opinion, taking only the parts that are favorable to a finding of nondisability." (Reply 5) (citing Robinson, 366 F.3d at 1083). As Plaintiff argues, the Tenth Circuit requires that an ALJ may not "pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability." Robinson, 366 F.3d at 1083; see also Hamlin, 365 F.3d at 1219 ("ALJ may not pick and choose which aspects of an uncontroverted medical opinion to believe, relying on only those parts favorable to a finding of nondisability."). Here, however, the ALJ did not use only the parts of Dr. Schlosberg's opinion that are favorable. Rather, he evaluated the entire opinion, recognizing that certain portions were contrary to his decision, and he explained why he discounted those portions. Moreover, Dr. Schlosberg's opinion was not uncontroverted, and the ALJ explained why he accorded greater weight to other opinions and other evidence over portions of Dr. Schlosberg's opinion.

The problem the court addressed in Robinson was that the ALJ did not explain why he failed to give controlling weight to the physicians opinion, and did not specify what lesser weight he gave it, but nonetheless relied on a portion of the physician's opinion--that the claimant was stable on medication. Id., at 1083. As quoted above, the Robinson court noted that an ALJ may not pick and choose from a medical opinion, and concluded by stating, "Because the ALJ failed to provide any explanation of how he

29

assessed the weight of the treating physician's opinion . . ., we cannot simply presume the ALJ applied the correct legal standards." Id., 366 F.3d at 1083 (quotations and brackets omitted, emphasis added).  Different than the ALJ in Robinson, the ALJ here did not pick and choose the parts favorable to his decision and ignore the rest.  Rather, he explained fully how he weighed Dr. Schlosberg's entire opinion.  The court finds no error.

## V.     The Step Five Evaluation

Plaintiff claims the ALJ did not meet his step-five burden to show that jobs exist within Plaintiff's RFC.  She provides three bases for this claim.  First, she argues that she has limited mathematical abilities making her unable to multiply and divide, that the ALJ did not include these restrictions in the hypothetical question presented to the vocational expert (VE), and that each of the representative jobs to which the VE testified require mathematical abilities greater than her capabilities.  Next, she argues that although the ALJ found she is unable to reach overhead, each of the jobs at issue require frequent reaching.  Finally, she argues that the ALJ found she has moderate difficulties in maintaining concentration, persistence, and pace, but failed to include those difficulties in his hypothetical question.  (Pl. Br. 29-30).

The Commissioner argues that the ALJ questioned the VE in accordance with the regulations and asked a hypothetical question including all of the RFC limitations he found based upon the record evidence.  He argues that the ALJ inquired regarding any conflicts between the VE testimony and the Dictionary of Occupational Titles (DOT) as required by SSR 00-4p, and was told there are none, negating the need for further inquiry.

(Comm'r Br. 13-14). He argues that the record as a whole does not support Plaintiff's allegation that she cannot perform Level 2 math, and that in any case, two of the representative jobs require only Level 1 math ability. He argues that the ALJ's hypothetical question for the VE included the limitation that Plaintiff should not perform above-shoulder work, and he might therefore rely upon the VE's response to find that the representative jobs, although requiring frequent reaching, required no overhead reaching. Finally, he argues that although the ALJ's hypothetical question did not include moderate difficulties in maintaining concentration, persistence, or pace, the ALJ's finding in that regard appears in his application of the psychiatric review technique to evaluate the severity of Plaintiff's impairments at steps two and three of the sequential evaluation process, but that the ALJ's RFC assessment accounted for those moderate difficulties by limiting Plaintiff to one to two-step, repetitive, unskilled work. The court finds no error in the ALJ's step five evaluation.

### A.     The ALJ's Step Five Analysis

As noted above, the ALJ assessed Plaintiff with the RFC to perform a range of light work further limited by the inability to crawl or to climb ladders, ropes, and scaffolds; the inability to perform above-shoulder work; the need to avoid exposure to unprotected heights and avoid work around hazards; the ability to perform other postural activities occasionally; a limited ability to speak English and a need for job instructions by demonstration only; and a limitation to one-step to two-step, repetitive, unskilled work. (R. 19). He stated that he called upon the services of a VE to see how much "these

limitations erode the unskilled light occupational base."  (R. 38).  At the hearing, the ALJ

asked the VE to assume an individual who "could lift and carry, push, and pull 20 pounds

occasionally/10 pounds frequently; stand and walk a total of six hours out of an eight-

hour day; sit six to eight hours; should not climb ladders, ropes, or scaffolds; should not

work at unprotected heights or around hazzards; and should not crawl; all postural

activities as far as her arms and legs and body are on occasional basis and she should not

perform above-shoulder work; limited ability to speak English so the instruction's by

demonstration; and she's limited to one to two-step repetitive unskilled work."  (R. 60).

Based upon that hypothetical, the VE responded that such an individual would be unable

to perform any of Plaintiff's past relevant work, but that she would be able to perform

representative work such as a deli cutter/slicer, marker, and photocopy machine operator.

Id. at 60-61.  The ALJ asked the VE if there was "[a]nything in your testimony that you

know to be inconsistent with the Dictionary of Occupational Titles?"  The VE responded,

"No, your honor."  (R. 61).

> ## B.    Analysis

As Plaintiff's arguments imply, "'testimony elicited by hypothetical questions that

do not relate with precision all of a claimant's impairments cannot constitute substantial

evidence to support the Secretary's decision.'"  Gay v. Sullivan, 986 F.2d 1336, 1340

(10th Cir. 1993) (citing Hargis v. Sullivan, 945 F.2d 1482, 1492 (10th Cir. 1991)).

However, with regard to Plaintiff's mathematical abilities, Plaintiff has not shown that the

hypothetical question presented here does not adequately account for those abilities, and

she has not shown that the representative jobs relied upon here cannot be accomplished by someone with her mathematical abilities.

As Plaintiff argues, Dr. Stern found that Plaintiff was unable to multiply single digit numbers. (R. 678). But, he found that she was able to add or subtract them, and was able to do "serial three" additions. Id. In the summary of his report, Dr. Stern stated that inconsistent results in Plaintiff's examination prevented him confirming or denying whether she has problems with poor concentration, but he opined that she could understand and perform simple tasks, could maintain an adequate work schedule with average performance demands, and could manage funds without assistance. Id. at 679. The ALJ summarized Dr. Stern's opinions, and accorded them "significant weight." (R. 26). He found that Dr. Stern reported Plaintiff had the "ability to perform simple math calculations." Id. While that is not exactly what Dr. Stern reported, the court cannot find that it is error. In light of Dr. Stern's report that Plaintiff's ability to concentrate is uncertain due to inconsistent results, that she can understand and perform simple tasks, can meet average performance demands, and can manage funds without assistance, it was not error for the ALJ conclude that the reported ability to add and subtract single digit numbers and to do serial three additions is commensurate with the ability to perform simple math calculations, even though she could not multiply single digit numbers.

Dr. Schlosberg's report does not require a different conclusion. As Plaintiff notes, Dr. Schlosberg reported that Plaintiff was unable to complete "serial seven" subtractions or "serial three" additions, could not accurately count backward from 20 to 1, and had

difficulty with calculations.  (R. 519).  Dr. Schlosberg opined that Plaintiff "did not show

the necessary calculation abilities to manage or direct the management of any funds or

benefits if so awarded."  (R. 519-20).  However, Dr. Schlosberg also reported that

Plaintiff had worked for six months "in quality control at Bushnell," and that her "longest

job was two years in quality control at Northface."  (R. 518).  He reported Plaintiff's

allegation that she graduated from high school in Mexico and "was a good student and

had no school problems" (R. 517), he reported that Plaintiff's difficulties with attention

"may have been partly related to language difficulties," and that she "was able to do

simple subtractions."  (R. 519).  In the "Conclusion" section of his report, Dr. Schlosberg

opined that Plaintiff's "intellectual abilities are likely within the average range," and that

"[i]t was difficult to determine specific cognitive deficits as the claimant's native

language was Spanish."  Id.  Finally, Dr. Schlosberg suggested that if further assessment

were necessary, "it would be preferable to determine whether testing in Spanish may

more accurately assess this individual's level of functioning."  (R. 520).

     As discussed above, the ALJ accorded "significant weight" to portions of Dr.

Schlosberg's opinions but "little weight" to other portions of those opinions, and the court

found that it was not error to do so.  In light of that fact, in light of the fact that in the past

Plaintiff has worked more than two years in "quality control," in light of the fact that Dr.

Schlosberg found Plaintiff's intellectual abilities are likely in the average range and that

Plaintiff reported she was a good student with no school problems and that she had

graduated from high school in Mexico, in light of Dr. Schlosberg's repeated equivocation

with regard to adequately assessing Plaintiff's cognitive deficits, and in light of the fact
that neither Plaintiff nor her counsel suggested to the ALJ that part of her alleged
disability stemmed from limited mathematical abilities, the court cannot find error in the
ALJ's alleged failure to include mathematical limitations in the hypothetical question
presented to the VE.

In her reply brief, Plaintiff notes that Social Security hearings are non-adversarial,
and that there is no requirement for her to ask questions of Plaintiff or of the VE related to
Plaintiff's math abilities because "substantial evidence had already been supplied as to
Plaintiff's math abilities by objective testing."  (Reply 5) (citing Dr. Stern's and Dr.
Schlosberg's reports (R. 676, 519, 520)).  She argues that requiring Plaintiff to bring the
evidence of limited math ability to the ALJ's attention "would place an undue burden not
only on the Plaintiff and/or her attorney, but on the entire hearing system."  Id. at 6.
Plaintiff's argument misunderstand the duty of Plaintiff's counsel in a Social Security
case.  To be sure, a Social Security disability hearing is nonadversarial, and it is the ALJ's
responsibility to ensure "that 'an adequate record is developed during the disability
hearing consistent with the issues raised.'" Branum v. Barnhart, 385 F.3d 1268, 1271
(10th Cir. 2004) (quoting Henrie v. U. S Dep't of Health & Human Servs., 13 F.3d 359,
360-61 (10th Cir. 1993)).  "Nonetheless, in cases such as this one where the claimant was
represented by counsel at the hearing before the ALJ, 'the ALJ should ordinarily be
entitled to rely on the claimant's counsel to structure and present claimant's case in a way
that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require

counsel to identify the issue or issues requiring further development.'" Id. (quoting

Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997)).  If Plaintiff or her counsel

believed that limited math ability was a material issue in Plaintiff's disability allegations,

it was counsel's duty to inform the ALJ.  This is especially true in a case such as this

where a "limited math ability" is by no means self-evident from the record evidence.

Finally, and perhaps most importantly, Plaintiff has not shown that the

representative jobs relied upon here cannot be accomplished by someone with her

mathematical abilities.  In her brief, Plaintiff makes that bald assertions that each of the

jobs identified by the VE requires the ability to multiply and divide, and that the deli

cutter/slicer job requires the ability to add, subtract, multiply, and divide all units of

measure, and to use fractions, ratio, rate, percent, and American monetary units.  (Pl. Br.

29).  However, Plaintiff cites to no authority--legal, medical, or vocational--for these

assertions, and the court finds no evidence in the record suggesting that these alleged

abilities are required to perform the jobs at issue.  The ALJ found that Plaintiff has the

ability to perform one-step to two-step, repetitive, unskilled work, and the VE testified

that the jobs at issue could be performed by a person with such limitations.  Beyond her

bald assertion, Plaintiff has provided no evidence that the jobs at issue require the alleged

mathematical abilities.

Plaintiff's next allegation (that each of the representative jobs require the ability to

reach frequently) suffers from the same deficiency as her argument regarding

mathematical abilities.  It is a bald assertion without evidentiary support.  Beyond that

fatal flaw in Plaintiff's argument, the ALJ instructed the VE that the hypothetical individual "should not perform above-shoulder work" (R. 60), and the VE testified that each of these jobs could be performed without "above-shoulder work." (R. 60-61). Even assuming each of the jobs at issue require frequent reaching as Plaintiff asserts, overhead reaching would fall within the rubric of "above-shoulder work," and the VE's testimony indicates that the jobs do not require "above-shoulder work," or overhead reaching. Even if the jobs require frequent reaching, the VE testimony is uncontroverted record evidence precluding a finding that the jobs at issue require overhead or above-shoulder reaching. Plaintiff simply has not shown that the jobs require an ability beyond the RFC assessed.

Finally, Plaintiff argues that because the ALJ found Plaintiff has moderate difficulties in maintaining concentration, persistence, or pace, he must provide a mental RFC limitation which is more than (or at least more specific than) the limitation to "repetitive, unskilled, simple work." (Pl. Br. 29-30) (citing Bowers v. Astrue, 271 Fed. App'x 731, 733-34 (10th Cir. 2008); Brachtel v. Apfel, 132 F.3d 417, 421 (8th Cir. 1997); and Newton v. Chater, 92 F.3d 688, 695 (8th Cir. 1996)). She argues that the ALJ should have included moderate difficulties in maintaining concentration, persistence, or pace in his hypothetical question, and because he did not, his hypothetical question did not identify Plaintiff's limitations with precision as required by Hargis, 945 F.2d at 1492. (Pl. Br. 30). The Commissioner argues that the ALJ's finding that Plaintiff has moderate limitations in maintaining concentration, persistence, or pace was a part of his application of the Commissioner's psychiatric review technique to determine the severity of

Plaintiff's mental impairments at step two and step three of the sequential evaluation

process.  (Comm'r Br. 17).  He argues that the ALJ went beyond that consideration, made

a specific RFC finding that Plaintiff's mental impairments limited her to one to two-step,

repetitive, unskilled work, and that finding accounted for the ALJ's step-two and three

determination that Plaintiff has moderate difficulties in maintaining concentration,

persistence, or pace.  Id.  In her reply brief, Plaintiff asserts that the Commissioner's

argument makes a faulty application of the psychiatric review technique:

> Defendant's theory appears to be the ALJ only utilizes the PRTF in
> evaluating mental impairments at step two as to whether said impairment is
> "severe" and step three in determining whether said impairment meets or
> equals a listed impairment.  (Def.'s Br. p. 17).  Defendant's own rulings, are
> contra, requiring a ALJ to provide in the RFC "a more detailed assessment
> by itemizing various functions contained in the broad categories found in
> paragraphs B and C of the adult mental disorders listings in 12.00 of the
> Listing of Impairments, and summarized on the PRTF."  SSR 96-8p.  The
> ALJ was required to include in the RFC and hypothetical to the VE his own
> findings [that] Plaintiff has moderate difficulties maintaining concentration,
> persistence, or pace.

(Reply 8).

Plaintiff's argument quoted above misunderstands both the regulations regarding

the Commissioner's psychiatric review technique, and the difference between the

limitations identified by applying the psychiatric review technique at steps 2 and 3, and

the mental RFC assessment applied at steps 4 and 5 of the sequential evaluation process.

The Commissioner promulgated his psychiatric review technique for evaluating mental

impairments in the regulations at 20 C.F.R. §§ 404.1520a and 416.920a.  The regulations

provide that in evaluating the severity of mental impairments at steps two and three of the

sequential evaluation process, the Commissioner will rate the degree of functional limitation in each of four broad mental functional areas:  activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Id. §§ 404.1520a(c) 416.920a(c).

After rating the degree of limitation in each mental functional area, the Commissioner determines the severity of plaintiff's mental impairments.  Id. §§ 404.1520a(d), 416.920a(d).  When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities."  Id. §§ 404.1520a(d)(1), 416.920a(d)(1).  Here, the ALJ found Plaintiff has "no to mild restrictions of activities of daily living," "no to mild difficulties in maintaining social functioning," and no episodes of decompensation.  (R. 19).  However, because he found Plaintiff has "moderate difficulties" in the third broad mental functional area--concentration, persistence, or pace--the ALJ in this case found that Plaintiff's mental impairments are "severe" within the meaning of the Act.  (R. 18-19).

Where the claimant's mental impairments are severe, as the ALJ found in this case, the technique requires an evaluation of whether the impairment meets or equals a listed impairment by comparing the step two findings and the medical evidence with the criteria of the mental listings.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).  It is only after the

Commissioner determines, as the ALJ did in this case (R. 18-19), that plaintiff's mental impairments do not meet or equal a listing, that the regulations require him to assess plaintiff's RFC. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3). The regulations provide that in assessing RFC "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [plaintiff's] ability to do [work.]" Id. §§ 404.1545(c), 416.945(c).

The Commissioner has explained the difference between evaluating the severity of mental limitations at steps 2 and 3 of the sequential evaluation process based upon the broad functional areas identified in the psychiatric review technique, and assessing mental RFC. SSR 96-8p, West's Soc. Sec. Reporting Serv., Rulings 147 (Supp. 2012). "The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in" the four broad mental functional areas. Id. "RFC is an issue only at steps 4 and 5 of the sequential evaluation process." Id. at 145. RFC must be expressed in terms of specific work-related functions not merely in terms of the exertional levels of work. Id. "Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment

40

in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." Id. at 149.  Therefore, an ALJ should not state a mental RFC in terms of the four functional areas, but should make a function-by-function assessment of each of the work-related mental activities relevant to the case at hand.  As this summary demonstrates, and as SSR 96-8p explains, the regulations require RFC to be expressed in terms of limitations in work-related mental activities, not in terms of the relative severity of impairments as found in the four broad mental functional areas considered at step 2 and 3 of the sequential evaluation process. Therefore, it was not only not error for the ALJ to exclude "moderate difficulties in maintaining concentration, persistence, or pace" in his hypothetical question or his RFC assessment, the regulations and SSR 96-8p indicate it is preferable that he not do so.

The case law cited by Plaintiff does not require a different result.  The two Eighth Circuit cases relied upon by Plaintiff each involved a situation where in his step 2 and 3 evaluation of severity, the ALJ found that the claimant "often" had deficiencies of concentration, persistence, or pace.  Brachtel, 132 F.3d at 420; Newton, 92 F.3d at 695. In each case the plaintiff argued that the hypothetical was erroneous because it failed to include evidence of the plaintiff's deficiencies in concentration, persistence, or pace. Brachtel, 132 F.3d at 420; Newton, 92 F.3d at 694.  In Newton, the Commissioner argued that the deficiencies in concentration, persistence, or pace "did not have to be included in the hypothetical question because the question limited Newton's capabilities to simple jobs."  92 F.3d at 695 (emphasis added).  The Newton court noted that the VE's response

41

to the hypothetical question may have been different if the question had "described all of Newton's functional limitations," and remanded with instructions that any hypothetical question "on remand should include Newton's deficiencies in concentration, persistence, or pace." Id.  In Brachtel, the hypothetical included a limitation to simple, routine, repetitive work which does not require close attention to detail, and a limitation that the individual should not work at more than a regular pace. 132 F.3d at 421.  The court noted the limitations in addition to simple work, and stated, "While this is scantly more than what was included in the Newton hypothetical, it is enough." Id.  The Brachtel court went on to affirm the ALJ's decision.

In this case, the ALJ did not limit Plaintiff to simple work.  Rather, he limited Plaintiff to "one to two-step repetitive unskilled work."  This is enough to distinguish both Newton and Brachtel, and render them incapable of persuasive value here. Moreover, here the ALJ found "moderate" deficiencies in concentration, persistence, or pace whereas the ALJs in Newton and Brachtel found "often" deficiencies in concentration, persistence, or pace.  Finally, as with Brachtel, the limitations to one-to two-step, repetitive unskilled work is much more than a limitation to "simple" work.

The single Tenth Circuit case relied upon by Plaintiff is even less like the present case than the cases of Newton and Brachtel.  In Bowers, "the ALJ created a hypothetical purporting to address Bowers' psychological limitations, but then announced that those limitations would need to be further explored by a consultative examiner."  271 Fed. App'x at 733.  The Bowers court stated the principle that "[s]imple work . . . can be ruled

42

out by a vocational expert on the basis of serious impairment in concentration and attention." Id. at 734 (citing the Eighth Circuit cases of Brosnahan v. Barnhart, 336 F.3d 671, 675 (8th Cir. 2003); and Newton, 92 F.3d at 695). After further examination, Bowers was found to be seriously impaired in the specific mental ability to concentrate and pay attention for extended periods, and moderately impaired in eight additional mental abilities, yet the ALJ did not propound another hypothetical question including the new mental limitations. Bowers, 271 Fed. App'x at 734. The court noted that had the hypothetical included all of Bowers' limitations, the VE's response may have been different. Id. Therefore, it found that the VE testimony did not constitute substantial evidence in support of the Commissioner's decision, and remanded the case for further proceedings. Id. In contrast to the Bowers case, here the ALJ did not limit Plaintiff to "simple work." In Bowers, the plaintiff made his argument based upon limitations in specific mental abilities the ALJ included in his mental RFC assessment, whereas the claimant here makes her argument based upon one of the broad mental functional areas used to evaluate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. Moreover, here the evaluation of Plaintiff's mental abilities did not change after the ALJ propounded his hypothetical question to the VE. Plaintiff has shown no error in the ALJ's step 5 evaluation.

As discussed in excruciating detail above, Plaintiff has not shown error as alleged in her brief.

**IT IS THEREFORE ORDERED** that judgement shall be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision below.

Dated this 14th  day of August 2012, at Kansas City, Kansas.


s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**